UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEMAJIO JEROME ELLIS,

    Plaintiff,

    v.      CAUSE NO. 3:25-CV-422-JD-JEM

BRIAN ENGLISH and KROCK,

    Defendants.

OPINION AND ORDER

Demajio Jerome Ellis, a prisoner without a lawyer, filed a complaint and a motion for a preliminary injunction. ECF 5, ECF 6. Because the preliminary injunction motion alleged he was in imminent danger, the court allowed him to proceed against the Warden of Miami Correctional Facility on a claim for permanent injunctive relief but took the remaining claims under advisement to be screened later. ECF 7. The court ordered a response to the preliminary injunction motion, and after briefing that motion was denied because the Warden demonstrated that Ellis is currently being held in the protective custody unit, where he is protected from harm, and will remain there for the pendency of this lawsuit. ECF 21. Now, the court turns to the complaint to see if the remaining allegations state a plausible claim for relief against any other defendant. *See* 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

In his complaint, Ellis alleges he is not being kept safe at Miami Correctional Facility from threats by other inmates. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id*. at 833. That said, not every such violent altercation violates the Constitution. *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id*. (internal quotation marks, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous

places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [associated with mental health issues] does not necessarily correlate to a 'substantial risk'"). Rather, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Ellis has already been granted leave to proceed against "Warden Brian English in his official capacity to obtain permanent injunctive relief to be protected from harm from inmates as required by the Eighth Amendment[.]" ECF 7 at 4. A claim for injunctive relief doesn't require that Ellis have already suffered an injury or that the Warden have any personal involvement in Ellis' care. It requires only that "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (quotation marks and brackets omitted). But to sue a defendant for damages, Ellis must plausibly allege that the defendant was personally involved in the alleged constitutional violation and that he was injured by that defendant's actions.

3

*See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). In looking at the allegations of the complaint, Ellis identifies only one relevant injury: a second attack by his cellmate on May 5, 2025. And there are only two defendants who plausibly had the personal involvement necessary to be held liable: Warden English and his counselor, Ms. Krock.

According to the complaint, Ellis was transferred to Miami Correctional Facility from New Castle Correctional Facility on April 25, 2025. Another inmate from New Castle was transferred with him and was housed a few cells down from him on L-Unit. That inmate began spreading rumors that Ellis was a snitch. Other inmates, including Ellis' cellmate, started calling him a snitch and forced him to buy drugs and commissary items for them. Within a couple days of his arrival, Ellis' cellmate attacked him and began stealing his food, commissary, hygiene, clothes, and other property items. Ellis alleges that he told his counselor, Ms. Krock, that he was having issues with his cellmate and that his cellmate had the code to his property box.

Ellis began filing classification appeals and emergency grievances. As the days went by, he had trouble sleeping because he feared his cellmate would kill him in his sleep. At one point, he says he was up for approximately 72 hours without any sleep. He continued to file emergency grievances and classification appeals, and he requested protective custody from Ms. Krock and Warden English.

Ellis alleges he was attacked by his cellmate again on May 5, 2025. He says his cellmate tied him up by his hands and feet and forced him to take a big dose of drugs. This caused him to "tweak out" and feel like he was going to die. ECF 6 at 11. He refused to stay in his cell after this and requested protective custody. These allegations

4

plausibly allege an Eighth Amendment claim against Ms. Krock and Warden English for failing to protect him from the second attack by his cellmate after knowing Ellis' cellmate has previously attacked him and continued to threaten him.

Following the alleged attack, Ellis was taken to a medical holding cell for a drug test that revealed he had meth in his system. He was left in the holding cell for about four hours, where he filled out a protective custody form. However, instead of being housed in protective custody, he was moved to P-Unit.

Ellis alleges he feared for his safety on P-Unit as well. He says that the inmates there began telling him he's a snitch and he's about to get "fucked up." ECF 6 at 13. Ellis told his counselor, Mr. Hamrick, about his fear for his safety from the continued threats. He gave Mr. Hamrick a protective custody form to turn in, and he told the Unit Team Manager about his fears. But he was not given protective custody; he was moved to B-Unit instead.

Ellis says he faced threats on B-Unit as well. As he was waiting for his cell to be ready, other inmates told him that they were going to get him when he wasn't expecting it. Ellis told Sgt. Ms. Hensley about the threats and requested protection, but she forced him to enter the cell under threat of being tazed. His cellmate told him to watch himself because they have been waiting for the opportunity to stab him. Ellis remained in his cell at breakfast time, fearing leaving his cell and walking to chow in the dark. After breakfast, he says he received another threat. An inmate came up to him and told him that he left L-Unit with a debt and that he's about to get "violated." ECF 6 at 14.

At the 6am shift change on May 8, 2025, Ellis continued to tell staff and his B-Unit counselor that they were trying to stab him. He turned in a protective custody request, which Captain Rush denied. He turned in another one, explaining the threats to be stabbed, killed, and raped and the extortion he faced. Captain Rush denied it again. While his protective custody requests were being considered, Ellis' cell door was kept closed. But after they were denied, Ellis was told his door would be opened. Therefore, Ellis held the door closed for over twelve hours. After the 6pm shift change on May 8, 2025, he continued to request protective custody. One of the inmates that had threated to stab him was seen on camera, walking up the stairs with a knife in his hands. Ellis continued to tell the correctional officers about the threats.

On May 9, 2025, around 1:00 am, officers came to take him to the Restricted Housing Unit ("RHU"). He remained there until approximately 10:00 am, when he was escorted to A-Unit. Here, Ellis began filing classification appeals to level down from a Level 3 to a Level 2, to be transferred to a different facility, and to request protective custody until he was transferred. A few days after his transfer to A-Unit, he saw a mental health practitioner, Ms. Rogers, and told her that inmates were trying to kill him. He explained his issues and mental health diagnosis and told her he needed to be in a mental health unit because of his anxiety, depression, anti-social personality disorder, and substance abuse.

Ellis' request for protective custody was denied and he was told he's going back to population. He fears for his safety in the general population. Because of his fear for his safety, Ellis has been granted leave to proceed on an injunctive relief claim against

6

the Warden. He additionally lists as defendants those prison officials he complained to about his fears or who denied him protective custody. However, because he was not physically harmed after that second alleged attack by his cellmate, he does not state a claim against any of these defendants. *See Walker v. Leibert*, 844 F. App'x 920, 922 (7th Cir. 2021) ("[T]o the extent Walker seeks damages based on the risk of what *could have* happened to him as a result, that risk is not actionable under [42 U.S.C.] § 1983 without actual injury." (emphasis in original)). Therefore, the defendants other than Counselor Krock and Warden English will be dismissed.

Ellis is not proceeding in forma pauperis. Therefore, the court will not serve the defendants pursuant to 28 U.S.C. § 1915(d). The Warden is served through his attorney, who has entered an appearance on his behalf, by the electronic notice of this order. *See* FED. R. CIV. P. 5(b). But it is Ellis' obligation to serve the remaining defendant, Counselor Krock, with a copy of the complaint and this screening order as provided by Federal Rule of Civil Procedure 4.

There are other pending motions that must be addressed. First, Ellis seeks to substitute Dalton Haney for defendant Jack Hendrix because Haney has taken over Hendrix's position as Classification Officer. ECF 12. In addition, he seeks to add as a defendant Deputy Warden Mr. C. Ertel. ECF 17. These motions will be denied for two reasons. First, Ellis does not state a claim against either of these defendants. He does not state a claim regarding his classification, and he does not allege how the Deputy Warden was personally involved in his injury. Second, to add a new defendant, Ellis must file an amended complaint, naming that new defendant. Complaints must contain

all the allegations and defendants in one document and cannot be amended in a piecemeal fashion. *See French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009). The Local Rules of this District require that an amended pleading "reproduce the entire pleading as amended," rather than simply incorporating a prior pleading by reference. N.D. Ind. L.R. 15-1. Finally, Ellis asks for a Zoom Conference. ECF 13. There is no need to hold a conference at this point.

For these reasons, the court:

(1) GRANTS Demajio Jerome Ellis leave to proceed against Warden Brian English and Counselor Krock in their individual capacities for compensatory and punitive damages for failing to protect him from a known risk of harm from his cellmate, resulting in a second attack on May 5, 2025, in violation of the Eighth Amendment;

(2) GRANTS Demajio Jerome Ellis leave to proceed against Warden Brian English in his official capacity to obtain permanent injunctive relief to be protected from harm from inmates as required by the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Worden, Dunn, Gapski, Hamrick, McKirbin, Coy, Jack Hendrix, Richard Brown, Indiana Dept of Corr, Rush, Morgan, Hensley, Smith, Murray, Angle, Rogers, James Basinger;

(5) DIRECTS the clerk to sign and seal summons for Counselor Krock and send it to Demajio Jerome Ellis;

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Brian English and Counselor Krock to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(7) DENIES the motions (ECF 12, ECF 13, ECF 17)

SO ORDERED on July 22, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT